SUSAN RIGGIO, Plaintiff-Appellant, v. ROMANEK-GOLUB & COMPANY *et al.*, Defendants (Millard Maintenance Service Company, Defendant-Appellee).

First District (3rd Division)   No. 84—3069

Opinion filed November 20, 1985.

John W. Cooley, of Evanston, for appellant.

Pamela B. Strobel and Charles J. Risch, both of Isham, Lincoln & Beale, of Chicago, for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

At 7 a.m. on October 23, 1979, plaintiff Susan Riggio was raped near her office on the 11th floor of the building at 625 North Michigan Avenue (625 North). She sued the alleged rapist, Edward Szymczak, his employer Millard Maintenance Service Company (Millard), Romanek-Golub & Company (Romanek), who managed 625 North, Around the Clock Security Company, who provided security guards

for 625 North, and a trust which once owned 625 North. Szymczak left the country before being served with process in the instant proceeding. Around the Clock Security Company moved for summary judgment, and plaintiff does not appeal from the trial court order granting that motion. All remaining defendants except Millard were dismissed pursuant to a settlement agreement. Plaintiff appeals only from the trial court order granting defendant Millard's motion for summary judgment on count II of the amended complaint.

Plaintiff alleges in count II that Millard was not registered for the private detective business, and it employed Edward Szymczak as a guard or watchman on October 23, 1979, in violation of "An Act to provide for Licensing and Regulating Detectives and Detective Agencies ***" (Ill. Rev. Stat. 1977, ch. 111, par. 2601 *et seq.*) (hereinafter cited as Detectives Act). Plaintiff also alleged that Millard was legally responsible for Szymczak's misconduct under section 10b(10) of the Detectives Act (Ill. Rev. Stat. 1977, ch. 111, par. 2622(10).) Plaintiff claimed that she was injured as a result of these statutory violations. Millard contends that it did not violate the Detectives Act because it was not engaged in the private detective business, and it did not employ Szymczak as a guard or watchman. We agree.

The facts concerning Szymczak's employment are essentially undisputed. Millard contracted with Romanek to clean 625 North every night. In an addendum to the contract, Millard agreed to "station a janitor in the lobby, arcade or 2nd floor area, to perform the necessary work outlined in the *** Contract, to also receive calls from persons coming or going from the building *** between the hours of 12 midnight to 8 a.m., five week nights." Romanek agreed to share the cost of this service. On October 23, 1979, Szymczak worked from midnight to 8 a.m. pursuant to this provision in the contract.

Helen Bayer, Szymczak's supervisor, stated in her deposition that she relieved the security guard each night at midnight and stayed in the lobby until 1 a.m. Between midnight and 1 a.m., on October 23, 1979, Szymczak brought cleaning equipment from other floors into the lobby, and he cleaned the washrooms on the arcade level. At 1 a.m. he returned to the lobby to relieve Bayer.

Stanley Sochacz, vice-president of Millard in charge of the Service Department, stated in his deposition that the janitor who worked from midnight to 8 a.m. was to remain in the lobby all night, to ensure that persons entering or leaving the building signed in or out. Sometimes the overnight janitor might ask a person trying to enter to show some identification, such as a driver's license, in order to verify the name. When plaintiff's counsel at the deposition asked: "What

was Mr. Szymczmak [*sic*] supposed to do \*\*\* [if] some unsavory character appears \*\*\* at 2:00 a.m. \*\*\*?" Sochacz answered: "I don't know what he would do. Maybe him [*sic*] call the police \*\*\*." Sochacz also answered that, if someone came downstairs carrying 15 typewriters, Szymczak should stop him and ask him to see his pass, which should be signed by Romanek. If there was a fire in the building, Szymczak should call the fire department. Sochacz stated that Szymczak was not expected to wear a uniform or carry a weapon. Szymczak had a key for the entrance to the building, but he did not have keys for the offices.

According to both Sochacz and Bayer, between 1 a.m. and 8 a.m. Szymczak was to wash the windows and the revolving door in the lobby, mop and buff the floor, clean the elevator doors, and shampoo the carpet in the elevator. There were no other persons guarding the building during those hours.

Under the terms of the Detectives Act,

"The private detective business, as used in this Act, shall consist of:
\*\*\*

B. The business of furnishing for hire or reward guard or guards, watchman or watchmen, patrolman or patrolmen, or other persons to protect persons or property \*\*\* or to prevent the theft or the unlawful taking of goods \*\*\*." Ill. Rev. Stat. 1977, ch. 111, par. 2601.

■ Plaintiff contends that summary judgment was improperly granted in this case because there were "genuine issues \*\*\* as to whether the Millard nightman arrangement falls within the scope and purview of the Detectives Act." Plaintiff, like defendant Millard, relies on the facts established by the contract between Romanek and Millard, and the depositions of Bayer and Sochacz. The question presented by this case is whether the Detectives Act applies to this given set of facts, and therefore we are presented with a question of law which is appropriately decided by the court on motion for summary judgment. (See *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 524, 439 N.E.2d 12.) As the appellate court recently stated, when "there is no dispute as to any material fact, but only as to the legal effect of the facts, summary judgment is appropriate." *First State Bank v. Busse* (1984), 126 Ill. App. 3d 577, 580, 467 N.E.2d 1061.

Plaintiff contends that the trial court should have granted summary judgment for plaintiff, relying on Illinois Attorney General Opinion No. S—1417 (April 11, 1979). The Attorney General stated that "a

person who checks merchants' doors and other security systems during the late night and early morning hours in order to prevent crime would be a watchman of business property within the meaning of section 1 of the [Detectives] Act." (1979 Ill. Att'y Gen. Op. 33, 34.) However, in the context of the entire opinion it appears that the Attorney General was referring to persons whose principal duty was to check doors and security systems.

The facts brought out in the depositions establish that Szymczak was principally employed as a janitor between 1 a.m. and 8 a.m. Both deponents listed extensive cleaning duties that Szymczak was required to complete during that time. The deponents' statements are substantiated by the contract between Millard and Romanek, which requires Millard to station a janitor in the lobby to perform cleaning work, and to sign people in and out. Since Szymczak was principally working as a janitor, the Attorney General opinion does not mandate a finding that Szymczak worked as a detective within the meaning of the Act.

Plaintiff argues that Szymczak was a watchman because he was required to ensure that persons entering or leaving the building sign in or out, and because Szymczak was supposed to ask to see a pass signed by Romanek from anyone removing valuables like typewriters from the building. Plaintiff also contends that Szymczak was protecting property because he was·expected to call the police if an unsavory character entered the building, and he was expected to call the fire department if there was a fire.

We disagree. The duties plaintiff finds established by Sochacz' deposition are duties that any company would expect of its employees. Sochacz' responses indicated that Szymczak had no particular training or instructions regarding when to call the police or the fire department. Sochacz only expected Szymczak to use his common sense. This expectation does not mean that Szymczak was engaged in the private detective business, any more than "a girl having the custody of babies and young children during the absence of their parents, an employee remaining in an office after regular business hours to lock the doors and close the vaults *** would be engaged in *** the private detective business." *People v. Jerry* (1941), 377 Ill. 493, 497-98, 36 N.E.2d 737.

■ We hold that the Detectives Act applies only to persons who are principally employed in the security work described in the Act. We find that Szymczak was not so employed between 1 a.m. and 8 a.m. on October 23, 1979, and therefore Millard cannot be liable under the Detectives Act for Szymczak's conduct. Accordingly, we af-

272

firm the trial court order granting Millard's motion for summary judgment.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.